IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

S.M.,

        Plaintiff,

v.                                               Case No. 21-1110-JWB

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

        Defendant.

**MEMORANDUM AND ORDER**

Plaintiff filed this action for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits. The matter is fully briefed and is ripe for decision. (Docs. 14, 18, 19.) For the reasons stated herein, the decision of the Commissioner is AFFIRMED.

**I.  Standard of Review**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable mind might accept as adequate to support the conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that he has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id*. at 751. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(iv), 20 C.F.R. § 416.945. The RFC represents the most that the claimant can still do in a work setting despite her impairments. *See Cooksey v. Colvin*, 605 F. App'x 735, 738 (10th Cir. 2015). The RFC assessment is used to evaluate the claim at both step four and step five. § 416.920(e), (f), (g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that he cannot perform the previous work, the fifth and final step requires the agency to consider

vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487 (citations omitted).

## II. Background and Procedural History

Plaintiff protectively filed an application for disability insurance benefits alleging a disability beginning August 9, 2017, when he was 39 years old.  The claim was denied initially and upon reconsideration at the administrative level, after which Plaintiff requested an evidentiary hearing before an Administrative Law Judge (ALJ).  On September 30, 2020, ALJ Edward E. Evans conducted a hearing by telephone (due to COVID-19) at which Plaintiff testified, as did impartial vocational expert (VE) Stephen Schill.  (Tr. at 45, 53.[1])

The ALJ issued a written opinion denying Plaintiff's application on October 29, 2020.  (*Id.* at 10.)  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (*Id.* at 12.)  At step two, the ALJ found Plaintiff suffered from the following severe impairments: obesity, migraines, hypertension, chronic kidney disease, obstructive sleep apnea, myocardial microvascular ischemia, carpal tunnel syndrome, depression with psychotic symptoms, and bipolar disorder with passive-aggressive symptoms.  (*Id.*)  At step three, the ALJ

---

[1] Citation to "Tr." refers to the administrative transcript. (Doc. 15.)

found that none of the impairments, alone or in combination, met or medically equaled the severity of any of the presumptively disabling impairments listed in the regulations. (*Id.* at 13-15.)

The ALJ next determined that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), in that Plaintiff can occasionally lift 10 pounds[2]; can push and pull 10 pounds; can sit for up to 6 hours of an 8-hour workday with normal breaks; may stand and walk 2 hours per workday, in combination, for up to half an hour at a time, but will need to sit for the same length of time after doing so; may occasionally reach overhead bilaterally, climb ramps or stairs, stoop, kneel, and crouch, but may not crawl or climb ladders, ropes, or scaffolds; may frequently handle and finger bilaterally; may not be exposed to hazards (e.g. dangerous machinery, unprotected heights); should avoid concentrated exposure to temperature and weather extremes, to wetness, to humidity, to vibration, and to pulmonary irritants (e.g. fumes, odors, dusts, gases, poor ventilation); can understand, remember and execute simple, routine instructions consistent with unskilled work, and can maintain concentration, persistence, and pace in so doing; may perform low-stress work, defined as only occasional workplace changes either presented gradually or which are relatively minor, making occasional simple non-emergent decisions, and performing tasks in which the individual has some control over work pace subject to ordinary overall production requirements; may occasionally interact with supervisors, but cannot tolerate close "over-the-shoulder" supervision; and may occasionally interact with colleagues if meetings are brief and task-oriented, but may not interact with the public. (*Id.* at 15.)   The ALJ thoroughly explained the RFC findings with respect to evidence in the record, including evidence relating to Plaintiff's mental RFC.

---

[2] The order actually states that Plaintiff "can lift 10 pounds occasionally and frequently [sic]...." (Tr. at 15.)  The reference to "frequently" appears to be a typographical error; neither party makes an issue of it. *See* 20 C.F.R. § 404.1567(a) (sedentary work involves lifting no more than 10 pounds at a time and occasionally carrying articles like files).

At step four, the ALJ found Plaintiff was not capable of performing his past relevant work. (*Id.* at 22.)  Plaintiff had reported past work as a phlebotomist, an assembler, and a quality control inspector.  (*Id.* at 54.)  The VE identified these jobs as, respectively, a skilled "pre-light" [exertional] position, a semi-skilled pre-heavy position, and a skilled medium position, and opined that a person with the RFC described above would not be able to perform these jobs.  (*Id.* at 55.)

At step five, the ALJ found – considering Plaintiff's age (39 years old), education (at least high school), work experience, and RFC – that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (*Id.* at 22.)  The VE testified that a person with Plaintiff's RFC could do several unskilled SVP [Specific Vocational Preparation] 2 jobs at the sedentary level.  (*Id.* at 55.)  The ALJ noted that Plaintiff's limitations impeded his ability to perform some types of sedentary work, but found, based on the VE's testimony, that Plaintiff could perform occupations such as polisher of eye frames (DOT 713.684-038, sedentary, SVP 2, unskilled, with 23,000 jobs nationwide); document preparer (DOT 209.587-018, sedentary, SVP 2, unskilled, with 28,000 jobs nationwide); and addresser (DOT 209.587-010, sedentary, SVP 2, unskilled, with 21,000 jobs nationwide).  (*Id.* at 23.)  The ALJ accordingly found Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.* at 24.)

On appeal, Plaintiff argues that the mental RFC for Plaintiff was not supported by substantial evidence.  He contends the ALJ erred by relying on normal examination findings in the treatment records while at the same time downplaying evidence showing Plaintiff's disabling mental limitations.  (Doc. 14 at 11.)  Plaintiff contends the mental status examinations relied on by the ALJ were largely perfunctory and were of little value in determining Plaintiff's ability to function in a work setting.  (*Id.* at 12-13.)  Plaintiff also contends the ALJ erred in his rejection of medical opinions that Plaintiff had disabling mental impairments because the ALJ failed to

consider or explain Plaintiff's treatment records as a whole and how they showed ongoing and severe symptoms.  (*Id.* at 14-15.)  Moreover, Plaintiff contends the ALJ's assessment failed to comply with the requirement in SSR 96-8p, 1996 WL 374184 (July 2, 1996), that an ALJ must explain how any material inconsistencies or ambiguities in the evidence were resolved.  (*Id.* at 16.)

### III. Analysis

Included in the evidence considered and discussed by the ALJ was the medical assessment of Lief Leaf, Ph.D., who reviewed Plaintiff's medical records.  Leaf found Plaintiff had only moderate limitations in the four broad categories making up the mental RFC: understanding and memory; social interaction; sustained concentration and persistence; and adaptation.  (Tr. at 111.) Leaf reviewed Plaintiff's treatment history with Dr. Mark Goodman, Ph.D., and noted Plaintiff had regular treatment that included medication and therapy.  Leaf concluded the course of treatment showed Plaintiff "has demonstrated improvement in functional abilities, particularly in managing anger/irritations," and that although Plaintiff reported significant psychological issues, "most [of the] recent MSEs [medical status examinations] have been grossly normal."  (*Id.* at 113.) Leaf opined that the totality of evidence demonstrates that Plaintiff "is capable of functioning [within] the above outlined … MRFC," i.e., that Plaintiff can understand and remember simple and intermediate instructions but can perform only simple tasks that do not require more than occasional interaction with coworkers, supervisors, and the general public.  (Tr. at 108, 113).  Leaf acknowledged that Goodman had opined Plaintiff could not hold a competitive job, but Leaf pointed out the mental status examinations "have been grossly normal" and opined that Plaintiff had demonstrated an ability to function within a low stress environment with simple repetitive tasks and limited social interaction.  (*Id.* at 113.)  Among other things, Leaf opined that Plaintiff was not significantly limited in understanding, remembering, and carrying out short and simple

instructions, in performing activities within a regular schedule, in maintaining a schedule, in the ability to ask simple questions or request assistance, and in maintaining socially appropriate behavior.  (*Id.* at 118-19.)  He found moderate limitations in a number of other tasks but was of the opinion that Plaintiff retained the mental RFC indicated above.  The ALJ found Leaf's opinions were persuasive, that the moderate limitations he found were "reasonable and consistent with the record," and that the indicated limitations were appropriate and consistent with Plaintiff's "reports of poor focus, rare hallucinations, and anger."  (*Id.* at 21.)

Leaf's assessment in turn essentially endorsed the prior opinions of Scott Brandhorst, Psy.D., who had reviewed Plaintiff's records in November of 2019.  (*Id.* at 82.)  Brandhorst likewise found no more than moderate limitations resulting from Plaintiff's mental impairments, and that Plaintiff was not significantly limited with respect to simple instructions and tasks.  (*Id.* at 95.)  The ALJ similarly determined that Brandhorst's opinions were persuasive for the same reasons indicated with respect to Leaf's.  (*Id.* at 22.)

In assessing Plaintiff's mental RFC, the ALJ also considered the July 2018 medical opinion of Scott Koeneman, Psy. D.  (Tr. at 355.)  Koeneman opined that Plaintiff was capable of following, carrying out, and remembering intermediate level instructions, and was capable of applying these instructions on simple tasks over an 8-hour workday, but said Plaintiff displayed mildly slow processing speed, which could impact his rate of production, and ongoing mood and anxiety disturbances that could result in mild interference in persistence.  He further said Plaintiff would benefit from an environment not requiring frequent interaction with coworkers.  (*Id.* at 358.) The ALJ found these conclusions unpersuasive, pointing to various factors, including Koeneman's "largely unremarkable exam findings," the unsupported nature of the findings, the "one-time" nature of the exam, and inconsistencies between the findings and the record. (*Id.* at 19.)

Under the regulations, the ALJ was required to consider "the persuasiveness of [the medical opinions] using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, such as 'a medical source's familiarity with the other evidence in a claim.'" *Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 (10th Cir. July 6, 2021). The ALJ did so here with respect to the medical opinions in the record.  With respect to Koeneman's opinions, the ALJ specifically pointed to factors relating to supportability and consistency, as well as noting the "one-time" nature of Koeneman's relationship to Plaintiff.  The mental status notes referred to by the ALJ reflected, among other things, that Plaintiff was adequately groomed, made good eye contact, had unremarkable motor activity, was attentive to the tasks requested of him, was appropriate in responses, his voice was clear and easy to understand, and he appeared to be a reliable historian.  (*Id.* at 356.)  Plaintiff was cooperative in interacting with the evaluator; had a slightly dysphoric mood; displayed appropriate interpersonal interactions; displayed no signs of impulsivity, endangering attitudes, or uncontrolled or unmanageable behaviors; appeared to have full insight; indicated he understood the purpose of the evaluation; his thought process was logical, linear, and goal directed; his thought content was free of delusions, obsessions, and bizarre ideas; he displayed no overt psychosis; and he did not report homicidal ideation.  Koeneman conducted a cognitive screening test that showed Plaintiff was oriented to time, person, place, and situation; his abstraction skills were normal; his attention and concentration were normal; he was able to recall 5 digits forward and 3 backwards; he was capable of following multi-step commands, his judgment and insight were normal; he demonstrated good long-term memory; his short-term memory was adequate; and his intellectual functioning appeared average. (*Id.* at 357.)  The ALJ properly relied upon such observations in reaching his conclusion, and his resultant findings were supported by substantial evidence.

The ALJ also considered and discussed at length the opinions of Mark D. Goodman, Ph.D., before ultimately finding the opinions unpersuasive.  (Tr. at 19-21.)  The ALJ again followed the regulations in assessing persuasiveness.  The ALJ first focused on supportability, noting Goodman administered an MMPI-2 test in July 2019, and although Goodman stated that Plaintiff's scores on two validity scales "render this test invalid," Goodman nevertheless stated that Plaintiff "made every effort to be open and honest on this test," and considered the results in diagnosing Plaintiff with recurrent depressive disorder with psychotic, bipolar, and passive-aggressive features.  (*Id.* at 511.)  The ALJ pointed out Goodman provided no explanation for finding Plaintiff was "open and honest" despite the invalid result and that it was unclear what psychotic features Goodman was referencing.  (*Id.* at 19-20.)

The ALJ proceeded to review Goodman's treatment records, which showed Goodman had seen Plaintiff eight times by September of 2019.  The ALJ observed there were minimal treatment notes pertaining to these weekly appointments, and, with the exception of one claim by Plaintiff of hallucinations, the "generally normal mental examination[s] do not suggest serious functional issues." (*Id.* at 20.) The ALJ concluded there was an inconsistency between Goodman's opinions that Plaintiff had marked or even extreme limitations in a number of areas (including completing a normal workweek without interruption from psychological symptoms and performing at a consistent pace), on the one hand, and Goodman's normal exam findings and the lack of debilitating symptoms or functional issues reflected in his treatment notes.  The ALJ found these limitations to be inconsistent with the record and unsupported by evidence.  The ALJ's assessment was consistent with the regulations and reflects a permissible approach to determining persuasiveness.  The absence of any documented observations and findings in the treatment notes reflecting the marked or extreme limitations later opined by the doctor was permissibly considered

by the ALJ as weighing against the persuasiveness of the opinion. The ALJ's assertions are also supported by various findings in the treatment notes, including observations that Plaintiff "has been excellent keeping his scheduled appointments," that he "is motivated for treatment" and "is trying very hard to improve the quality of his life," and that he had "no signs of delusions [or] hallucinations" and "has had [a] good response to treatment." (*Id.* at 665, 668.)

The ALJ also found unpersuasive the April 2020 opinion of Ana Ahrens, APRN, who was Plaintiff's medication provider. (*Id.* at 21.) Ahrens completed a medical source statement opining that Plaintiff was moderately limited in almost all categories of understanding and memory, was markedly limited in categories of sustained concentration and persistence, and was extremely limited in almost all categories relating to social interaction and adaptation. (*Id.* at 744-45.) She found that none of Plaintiff's limitations in any of 20 categories was mild. She further opined that Plaintiff would miss 4 days of work per month and would be off-task 25% or more of the time due to his condition (both of these were the highest options listed on the form.) (*Id.*)  In finding the opinions unpersuasive, the ALJ noted that Ahrens documented no abnormal findings with the exception of fair insight and judgment, yet her opinion "has described someone unable to interact with the public, unable to ask questions or request assistance, unable to get along with peers, unable to respond to changes, unable to make plans, and seriously limited in ability to be punctual, make decisions, or essentially maintain any sort of routine." (*Id.* at 21.) Ahrens' treatment notes reflected no such limitations. Instead they routinely indicated Plaintiff's thoughts were logical, he was alert and oriented, and his perception and attention were normal. (*Id.* at 717-24.) The ALJ fairly concluded from the record that Ahrens' extensive limitations were "wildly different" from – and unsupported by – either Ahrens' or Goodman's treatment notes. (*Id.* at 21.) *Cf. Leslie Annette S. v. Kijakazi,* No. 20-1282-JWL, 2021 WL 5998297, *6 (D. Kan. Dec. 20, 2021) ("The

court's review of the evidence reveals the ALJ's finding is a fair assessment of the record mental status examinations."); *D.F. v. Kijakazi*, No. 21-1017-SAC, 2021 WL 4439296, at *5 (D. Kan. Sept. 28, 2021) ("Citing *Smith v. Astrue*, 2009 WL 1580311 *8 (D. Kan. 6/4/2009), plaintiff contends that the ALJ placed too much weight upon treatment notes that made only general observations, and did not address categories of mental functioning. Unlike *Smith*, the treatment notes in this case made specific findings of 'no anxiety,' 'normal' attention span and concentration, and appropriate mood and effect.")

The ALJ considered all the evidence in the record, engaged in a thorough and extended discussion of it, and formulated an RFC that was based upon evidence that a reasonable mind could accept as adequate to support the ALJ's conclusions. The ALJ provided a narrative discussion that disclosed the rationale for his findings and explained the inconsistencies between certain opinions and the record that caused him to find some opinions unpersuasive. Plaintiff criticizes the ALJ's reliance upon certain evidence and cites evidence in the record to the contrary. But "[t]he mere fact that there is evidence which might support a contrary conclusion is not sufficient to show error on the part of the ALJ." *K.S. v. Saul*, No. 20-1253-JWB, 2021 WL 2338250, at *4 (D. Kan. June 8, 2021) (citing *Tammy F. v. Saul*, No. 20-1079-JWL, 2020 WL 7122426, at *7 (D. Kan. Dec. 4, 2020)). As the Commissioner argues, Plaintiff is essentially asking this court to reweigh the evidence and to rule that the evidence favoring Plaintiff ultimately outweighs the contrary evidence that the ALJ found persuasive. (*See* Doc. 14 at 12) ("the ALJ repeatedly discounted any evidence of disabling mental impairments due to the normal mental status examination findings throughout the record.") This court's standard of review prohibits it from engaging in such a reweighing of the evidence and compels it to affirm the Commissioner's findings when they are supported by substantial evidence. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)("[W]e will not reweigh

the evidence or substitute our judgment for the Commissioner's.")  "Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek*, 139 S. Ct. at 1154 (citation omitted). That threshold "is not high." *Id.* In this instance, the ALJ's findings had substantial support and the ALJ applied the correct legal standards.

## IV.  Conclusion

The final decision of the Commissioner denying Plaintiff's application for disability insurance benefits is AFFIRMED.  The clerk is directed to enter judgment accordingly.  IT IS SO ORDERED this 22nd day of April, 2022.

                                                          s/ John W. Broomes

                                             JOHN W. BROOMES
                                           UNITED STATES DISTRICT JUDGE